**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| ESTATE OF COLTON SABO, by TODD SABO, as Independent Administrator of the Estate, and on behalf of the Survivors,<br><br>     Plaintiff,<br><br>v.<br><br>MCHENRY COUNTY, MCHENRY COUNTY SHERIFF ROBB TADELMAN, WELLPATH, NEIL PAGETT, and currently unknown John Does and Jane Roes, in their individual capacities,<br><br>     Defendants. | CASE NO. |

**COMPLAINT**

Plaintiff sues Defendants and alleges:

**<u>Introduction</u>**

1. On July 29, 2023, Colton Sabo died a day after he was found unresponsive in the McHenry County Jail. Mr. Sabo was 31 years old.

2. Mr. Sabo was not the first inmate to die in the McHenry County Jail because of the staff's failure to render aid to individuals suffering from medical emergencies. He is not the only inmate at the McHenry County Jail to have had his medical needs ignored. Prompt and proper medical attention could have prevented these deaths.

3. Defendants ROBB TADELMAN and WELLPATH failed to implement any meaningful training or provide continuing education to their employees that focused on the signs, symptoms, and consequences of medical emergencies.

1

4.      Since July 2023, there have been four deaths at the McHenry County Jail. Notably, the McHenry County Sheriff's Office did not report all these deaths to the Illinois Office of Jail and Detention Standards as required. Colton Sabo's death also went unreported.

### Jurisdiction and Venue

5.      This Court has jurisdiction over this matter under the following:

   a.   28 U.S.C. § 1331, as this is a civil action arising under the Constitution, laws, and/or treaties of the United States;

   b.   28 U.S.C. § 1337, as this is a civil action or proceeding arising under an Act of Congress regulating commerce and/or protecting trade and commerce against restraints and monopolies; and

   c.   28 U.S.C. § 1343, as this is a civil action seeking to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom and/or usage, of a right, privilege or immunity secured by the Constitution of the United States and/or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

6.      Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions pursuant to 42 U.S.C. § 1983.

7.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as

Defendants do business in this judicial district and the events or omissions giving rise to the claims occurred in this judicial district.

## Parties

9.   Plaintiff TODD SABO is the duly appointed Independent Administrator of the Estate of Colton Sabo, having been appointed by the Probate Division of the Circuit Court of Boone County, in Case No. 24-PR-4. This action is brought by Plaintiff, the father of Colton Sabo, on behalf of the Estate of Colton Sabo, and on behalf of survivors.

10.   At times material to this action, Colton Sabo, Plaintiff's decedent, was a detainee confined in McHenry County Jail, Woodstock, Illinois, a correctional facility maintained by Defendant Sheriff ROBB TADELMAN ("Defendant TADELMAN").

11.   At all relevant times, Defendant TADELMAN was the duly elected Sheriff of McHenry County and chief administrator of the McHenry County Jail.  At all relevant times, he was acting under color of law and in the course and scope of his employment as the agent, servant, and an official policy maker for Defendant MCHENRY COUNTY on issues relating to care of detainees in McHenry County Jail and the policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit, and as the County's chief law enforcement officer. Defendant TADELMAN was the commanding officer of all McHenry County sheriff's deputies, correctional officers, and jail employees, and he was responsible for their training, supervision, and conduct. Defendant TADELMAN failed to adequately monitor the administration of the contract with Defendant WELLPATH even though he had been repeatedly alerted to their pattern of unconstitutional conduct by numerous lawsuits and knew that the Jail had become

unsafe for those with medical conditions like Colton Sabo. He is sued in his official capacity.

12.     Defendant MCHENRY COUNTY has joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

13.     At all material times, Defendant WELLPATH was and is owned and controlled by H.I.G. Capital. Defendant WELLPATH acts on behalf of H.I.G. Capital, and was and is responsible for the hiring, retaining, training, and supervising of the conduct, policies and practices of its employees and agents of WELLPATH.

14.     H.I.G. Capital, LLC, ("H.I.G.") is a private equity firm doing business in MCHENRY COUNTY through Defendant WELLPATH.

15.     H.I.G. acquired Correct Care Solutions ("CCS") and other private correctional health care providers and rebranded as WELLPATH. H.I.G. is the owner, manager and partner of CCS (now WELLPATH ), which is employed to provide delivery of medical services to detainees, such as Colton Sabo. It was and is responsible for the management, hiring, retaining, training, and supervising of the conduct, policies and practices, customs, standards, and finances, of its employees, managers, supervisors, contractors, and leaders in the service of providing medical care to prisoners.

16.     Wellpath's executives, directors, supervisors and managers, physicians, nurses, and mental health providers act on behalf of H.I.G. and WELLPATH. H.I.G. is the alter ego of WELLPATH, and/or alternatively WELLPATH acts on behalf of H.I.G. which has control over WELLPATH.

17.     H.I.G. accomplishes this inter alia, by placing its in-house professional services and expertise as board members of WELLPATH to ensure their control over WELLPATH.

There is unity of interest and ownership such that the separate personalities of H.IG. and WELLPATH no longer exist as WELLPATH and their employees and agents act with the consent, management, approval, ratification and direction of H.I.G.

18. Before acquiring CCS through joining other correctional healthcare companies, and renaming them WELLPATH, H.I.G. knew or should have known of the pervasive unconstitutional conduct of these companies. H.I.G. knew this and acquired this information through performing due diligence analysis prior to acquiring CCS. It made the decision that providing mental health care in jails was a financially lucrative business to acquire, control and manage, and have adjusted their private equity fund investments and operational structure to capitalize on sick and mentally ill prisoners in jail systems across the Country. H.I.G.'s use of WELLPATH is but a mere shell, an instrumentality or conduit for the business of financially profiting from providing mental/medical care to detainees in jails through these shell companies.

19. On October 1, 2018, H.I.G. announced that it acquired CCS and merged it with Correctional Medical Group Companies (CMGC).

20. H.I.G. renamed CCS-CMGC as "WELLPATH" in October 2018, for the purpose of carrying H.I.G.'s ownership and financial interests in providing jail mental and medical health care and so H.I.G. controls the assets and financial gains while CFMG as WELLPATH assumes the liabilities. WELLPATH is H.I.G.'s 23rd controlled investment in healthcare since 2008 and is its 14th current platform in the sector. WELLPATH is estimated to generate $1.5 billion annually.[1]

---

[1] HIG Capital, "Correct Care Solutions and Correctional Medical Group Companies Join Forces to Deliver Best-in-Class Healthcare." HIG CAPITAL NEWS, October 1, 2018, available at https://higcapital.com/news/release/1128.

21. On October 1, 2018, H.I.G. publicly announced that "[o]ver the years, as the country's health care system has changed we have seen more and more individuals with acute mental health diagnosis and substance use disorders being treated by our doctors, nurses and clinicians in correctional settings."

22. A Managing Director of H.I.G. announced, "We are proud of what we have accomplished since partnering with CMGC in 2012, and excited to bring these two companies together."

23. H.I.G. knew that behavioral and mental healthcare, in particular, located in state and federal correctional facilities or civil commitment centers have become repositories particularly for the vulnerable mentally ill population growing across the United States and they decided to capitalize on this vulnerable population.

24. WELLPATH, upon information, with approval of H.I.G., entered into a contact with MCHENRY COUNTY to provide medical and mental health services of those incarcerated and detained at the McHenry County Jail.

25. Defendant WELLPATH was acting on behalf of H.I.G. and was and is an agent of H.I.G. and therefore H.I.G. is responsible for WELLPATH's conduct as described in this Complaint.

26. H.I.G. exercises sufficient control over WELLPATH's activities such that WELLPATH is a mere agent or instrumentality of H.I.G.

27. H.I.G. places its senior partners and/or members on the boards or managing bodies of WELLPATH in order to maintain a high degree of day-to-day control over WELLPATH's activities.

28. H.I.G. has seats on the board of WELLPATH and controls, manages, and approves major

policy decisions of WELLPATH.

29.  At times material to this complaint, Defendant NEIL PAGETT  ("Defendant PAGETT")
     was a correctional officer in the McHenry County Jail who was responsible for the well-
     being and safety of detainees, including making sure detainees were not in medical
     distress while doing cell checks. At all times material to this action, Colton Sabo was a
     detainee subjected to the care, custody, and control of Defendant PAGETT while he was
     housed in the Jail. Defendant PAGETT is employed by McHenry County.

30.  The currently unknown John Does and Jane Roes are individuals working in the
     McHenry County Jail. It is currently unknown if they are employees of McHENRY
     COUNTY or WELLPATH.

### Common Allegations of Fact

31.  On or about September 21, 2022, Colton Sabo was booked in the McHenry County Jail.

32.  During his medical intake with McHenry County Jail correctional staff, Colton Sabo
     informed the officer that he had medical conditions, including a history of seizures.

33.  On October 1, 2022, while meeting with an employee of Defendant WELLPATH during
     his medical history and physical assessment, Colton Sabo informed the WELLPATH
     employee that he had suffered three different seizures while incarcerated in the McHenry
     County Jail and that he had been occasionally "passing out."

34.  On October 3, 2022, Colton Sabo had a mild seizure in front of Officer Bruce. Officer
     Bruce prevented Colton Sabo from falling down and immediately contacted medical staff.
     Colton Sabo's blood pressure was extremely low and the incident was documented in his
     medical chart as a possible seizure.

35.  Throughout his stay at the McHenry County Jail, Colton Sabo complained of

7

gastrointestinal issues with little to no relief from the treatment received from WELLPATH employees.

36. There is no information in the medical records that Colton Sabo received any treatment or medications related to his seizures.

37. On July 28, 2023, upon information, Colton Sabo had a seizure while he was in Cell 125 in Section 2 of the McHenry County Jail.

38. Upon information, Defendant PAGETT was working in that section of the jail.

39. Upon information, Defendant PAGETT observed Colton Sabo's medical emergency, yet failed to properly respond.

40. Upon information, Defendant PAGETT did not immediately contact his supervisor nor medical staff. Instead, Defendant PAGETT returned to his post and used a phone to make some calls.

41. Upon information, Defendant PAGETT waited nearly five minutes before he went back and checked on Colton Sabo.

42. Upon information, during that time, Colton Sabo remained slumped in his cell in medical distress.

43. Upon information, the seizure interrupted Colton Sabo's breathing which reduced the oxygen in his blood.

44. When medical staff finally arrived at Colton Sabo's cell, he was unresponsive.

45. Colton Sabo was transported to Northwestern Medicine McHenry Hospital.

46. At the hospital, Colton Sabo was found to have an anoxic brain injury because of loss of oxygen to the brain.

47. On July 29, 2023, Colton Sabo was pronounced dead at Northwestern Medicine McHenry

Hospital.

48.    The cause of death was categorized as undeterminable by the McHenry County Coroner.

49.    All Defendants knew that Colton Sabo, as a detainee in the McHenry County Jail custody, had no other treatment options, and that if they (WELLPATH and the McHenry Defendants) failed to provide adequate treatment, he could access no other treatment.

50.    It would have been obvious to any reasonable correctional officer that when Colton Sabo was suffering from a seizure he needed immediate medical treatment.

51.    At times material hereto, Defendant TADELMAN and MCHENRY COUNTY employees and agents acting on his behalf, acted within the scope of their employment and under color of state law.

52.    At all times material hereto, Defendant TADELMAN conducted regular audits and received reports on conditions at the McHenry County Jail. Therefore, Defendant TADELMAN was well aware that detainees, including Colton Sabo, were not receiving minimally adequate medical care while incarcerated in the McHenry County Jail.

53.    Defendant TADELMAN had heavily participated in budget plans that left medical needs unmet for inmates like Colton Sabo.

54.    Defendant TADELMAN was aware that correctional staff were untrained and prone to ignore medical problems, frequently causing harm to inmates in their care.

55.    At all times material, Defendant TADELMAN knew that the training given to correctional staff did not sufficiently provide the staff necessary information regarding the right of detainees such as Colton Sabo to be kept safe and provided with proper medical care.

56. The staff's training was inadequate and insufficient to properly provide appropriate guidelines and job standards for proper performance of their job in a manner sufficient to meet the needs of Plaintiff's decedent.

57. As a direct and proximate result of Defendants' acts and omissions, Colton Sabo died on July 29, 2023, after being found unresponsive in his cell at the McHenry County Jail the day prior.

58. Plaintiff has had to retain counsel and is entitled to reimbursement of a reasonable attorneys' fees, pursuant to 42 USC §1988.

## **Causes of Action:**

### **I.    Claims under 42 U.S.C. 1983: TADELMAN**

59. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

60. Plaintiff is entitled to relief against Defendant TADELMAN under 42 U.S.C. § 1983, based on violation of the Fourteenth Amendment and Eight Amendment to the U.S. Constitution.

61. At all times material, Plaintiff's decedent, Colton Sabo, had a constitutionally protected right under the Fourteenth Amendment and Eight Amendment to the U.S. Constitution to receive needed care while in the McHenry County Jail, and to have his medical and mental health issues timely and properly assessed and treated.

62. Defendant TADELMAN deliberately disregarded the immediate and serious threat to the mental and medical health and well-being of persons in the McHenry County Jail and exhibited deliberate and callous indifference to serious medical and mental health needs, by denying access to intensive and structured medical health care, treatment and observation necessary to treat serious medical needs and prevent suffering and death.

10

63. Defendant TADELMAN was well aware that there were detainees confined in the McHenry County Jail who suffered from severe medical health needs and were at risk of injury and/or death. Despite this knowledge, Defendant TADELMAN intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

64. Defendant TADELMAN knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could die, that such deaths were reasonably foreseeable, and that the threat of this was imminent and immediate.

65. Defendant TADELMAN deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference to their serious medical and psychological needs by denying and unreasonably delaying access to competent medical care to treat their serious medical needs, in that:

   a. with full knowledge of prior in custody deaths, and that failing to provide adequate medical care to detainees with serious medical issues could die were reasonably foreseeable, Defendant TADELMAN simply failed to provide needed care and attention;

   b. with full knowledge of detainees with histories of serious medical issues, Defendant TADELMAN's actions in failing to provide close observation and adequate medical care by trained medical professionals was so grossly substandard, incompetent, and inadequate as to fairly be characterized as medical and mental health care so cursory as to amount to no medical and mental health care at all.

66. In light of the aforementioned, Colton Sabo suffered from both an objectively and

subjectively substantial risk of serious harm while under the care and custody of Defendant TADELMAN. Defendant TADELMAN reacted to this risk in an objectively and subjectively unreasonable manner.

67. It is more likely than not that the failures of Defendant TADELMAN as alleged above were the cause of Colton Sabo's death.

68. As a result of Defendant TADELMAN's disregard of and indifference to Colton Sabo's constitutionally protected right to be provided with proper care, Colton Sabo's medical needs were ignored.

69. As a direct and proximate result of Defendant TADELMAN's deliberate indifference to Colton Sabo's serious health needs, Colton Sabo died from complications of serious medical issues on July 29, 2023.

WHEREFORE, Plaintiff prays for judgment as noted below.

## II.     Claims under 42 U.S.C. 1983: PAGETT

70. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

71. Plaintiff is entitled to relief against Defendant PAGETT under 42 U.S.C. § 1983, based on violations of the Fourteenth Amendment and Eight Amendments to the U.S. Constitution.

72. At all times material, Plaintiff's decedent, Colton Sabo, had a constitutionally protected right under the Fourteenth and Eight Amendments to the U.S. Constitution to receive needed care while in the McHenry County Jail, and to have his serious medical issues timely and properly assessed and treated.

73. Defendant PAGETT deliberately disregarded the immediate and serious threat to the mental health and well-being of persons in the McHenry County Jail in need of medical

12

treatment and exhibited deliberate and callous indifference to serious medical and mental health needs, by denying access to intensive and structured medical care, treatment and observation necessary to treat serious medical needs and prevent suffering and death.

74. Defendant PAGETT was well aware of the facts that there were inmates who suffered from severe medical needs and were at risk of injury and/or death. Despite this knowledge, Defendant PAGETT intentionally and knowingly failed to provide serious, ongoing case management and treatment for such inmates and failed to regularly monitor their medical health care needs.

75. Defendant PAGETT knew at all times material to this action that there was a substantial risk that detainees with serious medical issues, left substantially untreated, could be seriously injured and/or die, that such injuries and/or deaths were reasonably foreseeable, and that the threat injuries and/or death was imminent and immediate.

76. Defendant PAGETT deliberately disregarded the immediate and serious threat to detainees' medical health and well-being and exhibited deliberate indifference and callous indifference to their serious medical and psychological needs by denying and unreasonably delaying access to health care to treat their serious medical issues.

77. In light of the aforementioned, Colton Sabo suffered from both an objectively and subjectively substantial risk of serious harm while under the care and custody of Defendant PAGETT.

78. Defendant PAGETT reacted to this risk in an objectively and subjectively unreasonable manner.

79. It is more likely than not that the failures of Defendant PAGETT as alleged above were the cause of Colton Sabo's death.

80.  As a direct and proximate result of Defendant PAGETT's deliberate indifference to Colton

Sabo's serious medical needs, Colton Sabo died on July 29, 2023.

WHEREFORE, Plaintiff prays for judgment as noted below.

### III.  *Monell* Claim: WELLPATH.

81.  The violations of Colton Sabo's constitutional rights under the Fourteenth Amendment to

the United States Constitution, her damages and the conduct of the individual defendants,

were directly and proximately caused by the actions and/or inactions of WELLPATH,

which has, with deliberate indifference:

a)  failed to establish and/or implement policies, practices and procedures

to ensure that detainees at the McHenry County Jail receive appropriate

medical care for serious medical needs, and if necessary, health care services

outside the jail. Specifically, it was a widespread practice and/or official policy at

the McHenry County Jail not to contact emergency medical services on behalf of

an inmate experiencing an obvious medical emergency without the prior

approval of WELLPATH, even where such approval was wrongfully withheld or

denied;

b)  failed to establish and/or implement policies, practices and procedures

to ensure that detainees at the McHenry County Jail receive appropriate

medical care for serious medical and mental health needs; more specifically

failing to send individuals experiencing drug overdose or withdrawal to the

hospital;

c)  failed to adequately assess and provide adequate care and treatment for

inmates who exhibiting signs of bizarre behavior;

d)      failed to adequately monitor the deteriorating mental and medical health conditions of inmates;

e)      failed to ensure through training, supervision and discipline that medical staff at the McHenry County Jail, in necessary circumstances, make a referral for health care services outside the Jail;

f)      failed to ensure through training, supervision and discipline that correctional and medical staff adequately communicate and document inmates' deteriorating mental and medical health conditions;

g)      failed to ensure through training, supervision and discipline that correctional and medical staff properly respond to inmates' deteriorating mental and medical health conditions;

h)      failed to contract for medical and mental and medical health services in a manner so that financial incentives would not affect referring inmates for health care services outside the Jail;

i)      possessed knowledge of deficiencies in the policies, practices, customs and procedures concerning inmates, and approved and/or deliberately ignored these deficiencies.

WHEREFORE, Plaintiff prays for judgment as noted below.

## IV.     State Claim for Wrongful Death: TADELMAN and McHENRY COUNTY

82.    Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

83.    Colton Sabo was survived by his father, TODD SABO, and Sarah Meyer who constitute his heirs under Illinois law.

15

84. Decedent Colton Sabo was officially pronounced dead on July 29, 2023.

85. The wrongful death of Colton Sabo was proximately caused by the neglect, default, and/or willful and wanton conduct of the Defendants, as described above, in violation of 740 ILCS § 180/1.

86. MCHENRY COUNTY and TADELMAN's employee, Defendant PAGETT, failed to properly monitor and/or report the declining health of Colton Sabo.

87. The MCHENRY COUNTY and TADELMAN Defendants' wrongful conduct was the direct and proximate cause of injury and damage to Colton Sabo and his estate.

88. As next of kin, the heirs of Colton Sabo have lost and will continue to lose pecuniary support, consortium, society, companionship as well as the love and affection of their cherished son have incurred funeral and burial experiences as a proximate result of his wrongful death.

WHEREFORE, Plaintiff prays for judgment as noted below.

## V.    State Claim for Wrongful Death: WELLPATH

89. Plaintiff re-alleges the Common Allegations of Fact as if fully set forth herein.

90. Colton Sabo is survived by TODD SABO and Sarah Meyer, his heirs under Illinois law.

91. Decedent Colton Sabo was officially pronounced dead on July 29, 2023.

92. The WELLPATH Defendants had a duty to Colton Sabo to exercise reasonable care according to the conditions known to them or that, through reasonable care that should have been known to them, in accordance with the standards of care in the community of social workers.

93. The WELLPATH Defendants breached their duty to Colton Sabo to exercise reasonable care according to the conditions known to them or that, through reasonable care should

have been known to them, in accordance with the standards of care in their respective professional communities.

94. WELLPATH employees had a duty to adequately evaluate and document Colton Sabo's medical and mental health needs and to refer him for medical and psychiatric evaluation and treatment each time they observed that his needs were not otherwise being met.

95. WELLPATH employees saw Colton Sabo on numerous occasions and failed to adequately evaluate and document Colton Sabo's medical needs, including his history of seizures.

96. WELLPATH was negligent and deviated from the standard of care in one or more of the following respects:

   a.   Although Colton Sabo objectively suffered from a serious medical issue, WELLPATH employees failed to adequately intervene and determine that a health emergency existed;

   b.   WELLPATH employees failed to properly diagnose and treat Colton Sabo's serious medical health issues; and

97. The injuries and death suffered by Colton Sabo were proximately caused by the negligence, breach of duty of the standard of care, neglect, default, and/or willful and wanton conduct of the WELLPATH Defendants, as described above, in violation of 740 ILCS § 180/1.

98. The WELLPATH Defendants' negligent and wrongful conduct was the direct and proximate cause of injury and damage to Colton Sabo and his estate.

99. As next of kin, the heirs of Colton Sabo have lost and will continue to lose, consortium, society, companionship as well as the love and affection of their cherished son and have incurred funeral and burial experiences as a proximate result of

his wrongful death.

WHEREFORE, Plaintiff prays for judgment as noted below.


## Damages

A. The Estate of Colton Sabo has sustained the following damages:

   1. funeral and burial expenses incurred as a result of decedent's death that have become a charge against his Estate or that were paid on his behalf;

   2. loss of prospective net Estate accumulations;

   3. decedent's conscious pain and suffering and the inherent value of life;

   4. pre- and post-judgment interest; and

   5. loss of earnings of Colton Sabo from the date of his death, less lost support of his survivors excluding contributions in kind with interest.

Accordingly, Plaintiff respectfully requests that the Court award Plaintiff the aforementioned damages; any and all other compensatory damages suffered by Plaintiff; punitive damages; attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and such other and further relief as the Court deems just and equitable.


## Prayer for Relief

WHEREFORE, the Plaintiffs seek judgment as follows:

A.    Compensatory damages against each of the Defendants herein;

B.    Punitive damages against Defendants sued individually;

C.    Attorneys' fees pursuant to 42 U.S.C. § 1988 and costs of litigation;

D.    A trial by jury on all issues so triable;

E.    Such further relief as the Court deems just and proper.

Respectfully Submitted,

*s/Louis J. Meyer*

*s/Daniel P. Kiss*

Louis J. Meyer
Daniel P. Kiss
MEYER & KISS, LLC
53 West Jackson Blvd., Suite 724
Chicago, IL 60604
t. 312.765.0100
f. 312.785.7803
e. louismeyer@meyerkiss.com
e. dankiss@meyerkiss.com

19